THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
AT SACRAMENTO

| | |
|---|---|
| BERNARDO VASQUEZ AGUIRRE, | Case No. C06-1487-JCC |
| Petitioner, | |
| | ORDER |
| v. | |
| ROSEANNE CAMPBELL, *et al.*, | |
| Respondents. | |

This matter comes before the Court on Petitioner Bernardo Vasquez Aguirre's First Amended Petition for Writ of Habeas Corpus (Dkt. No. 9); Respondent Rosanne Campbell's Answer (Dkt. No. 25);[1] and Petitioner's Traverse (Dkt. No. 30). Having reviewed the relevant documents, the governing law, and the balance of the record, the Court declines to hold an evidentiary hearing and DENIES the petition, for the reasons that follow.

---

[1] Michael Martel is now the Acting Warden of Mule Creek State Prison; thus, the Court substitutes him as Respondent. *See* Fed. R. Civ. P. 25(d); *see also Stanley v. Cal. Sup. Ct.,* 21 F.3d 359, 360 (9th Cir. 1994) (noting that respondent in habeas petition is generally the warden of the facility where petitioner is incarcerated).

ORDER – 1

I.      **BACKGROUND**

Petitioner is incarcerated at Mule Creek State Prison in Ione, California. (*See* Traverse 14 (Dkt. No. 30 at 1).) In 2004, Petitioner was convicted by a jury in the Sacramento County Superior Court of a variety of sex crimes against his wife's granddaughter, who, at all relevant times, was under twelve years old. The events occurred over a series of six years, between 1994 and 2000, when Petitioner was between thirty-two and thirty-eight years old. *People v. Aguirre*, No. C047644, at 2 (Cal. Ct. App. 3d Dist. Jan. 11, 2006) (Dkt. No. 26-4) (hereinafter Direct Appeal).[2] The jury convicted Petitioner of five separate counts of committing a lewd or lascivious act with a child under fourteen years of age (Counts 1, 2, 6, 7, and 8); three counts of aggravated sexual assault of a child under the age of fourteen by rape (Counts 3, 5, and 10); one count of aggravated sexual assault of a child under fourteen years of age by forcible oral copulation (Count 9); and one count of misdemeanor indecent exposure (Count 4). (*Id.* at 2–3.) The trial court sentenced Petitioner to a term of fourteen years, followed by sixty years to life. (*Id.* at 4.)

On direct appeal, Petitioner challenged his conviction and sentence on five grounds: (1) insufficient evidence to support convictions for four counts of aggravated sexual assault of a child; (2) failure to instruct on lesser included offenses; (3) erroneous instruction on adoptive admissions in violation of his right to silence; (4) running of the limitations period on his misdemeanor conviction; and (5) violation of his right to a jury trial in the imposition of consecutive sentences. (Direct Appeal (Dkt. No. 26-4).) The appellate court vacated the indecent exposure conviction because it was time-barred, but affirmed the remaining nine counts in a reasoned opinion. The California Supreme Court then summarily denied review. *People v. Aguirre*, No. S141092 (Cal. Apr. 12, 2006) (en banc) (Dkt. No. 26-6).

---

[2] All docket references to Docket Number 26 refer to paper filings that have been lodged in hard copy with the Court, as indicated in the Notice. Thus, 26-4 refers to Lodged Document No. 4, and so on.

After exhausting his direct appeals, Petitioner began state habeas proceedings. Petitioner first sought a writ of habeas corpus in Sacramento County Superior Court, arguing that his due process rights had been violated because the prosecution used a "generic" charging document, and because the trial court failed to disqualify the trial judge. *In re Bernardo Vasquez Aguirre*, No. 06F06069 (Cal. Super. Ct. Sacramento Aug. 21, 2006) (Dkt. No. 26-8) (hereinafter State Habeas Op.). The superior court denied his petition on August 21, 2006. (*Id.*) The California Court of Appeal, and then the California Supreme Court, both summarily denied petitioner's writ. *In re Bernardo Vasquez Aguirre*, No. C053599 (Cal. Ct. App. 3d Dist. Sept. 14, 2006) (Dkt. No. 26-10); *In re Bernardo Vasquez Aguirre*, No. S147372 (Cal. Apr. 18, 2007) (Dkt. No. 26-12).[3]

On April 26, 2007, Petitioner, proceeding *pro se*, filed an amended petition for habeas corpus in this Federal Court. (Am. Pet. (Dkt. No. 9).) Petitioner here presents eight substantive grounds for relief. The first four were presented on direct appeal to the California state courts: (1) insufficient evidence on four of the counts; (2) failure of the court to instruct on lesser included offenses; (3) imposition of consecutive sentences in violation of Sixth Amendment right to jury trial; and (4) admission of video interview in which silence was allowed to infer guilt in violation of due process and Fifth Amendment right to freedom from self-incrimination. The next two grounds were presented in Petitioner's state habeas proceeding: (5) failure to indict with sufficient particularity in violation of right to due process; and (6) failure to disqualify the trial judge in violation of right to due process. The last two grounds for relief are raised for the first time on this petition: (7) infirmities with the California courts' post-conviction proceedings in violation of right to due process; and (8) ineffective assistance of counsel at trial and on appeal. Petitioner additionally requests an evidentiary hearing.

---

[3] Respondents concede that Petitioner has now exhausted state habeas remedies pursuant to 28 U.S.C. § 2254(b)(1)(A). (*See* Answer ¶ IV (Dkt. No. 25 at 12).)

ORDER – 3

## II.        DISCUSSION

### A.        Federal Habeas Review, Generally

A state prisoner may collaterally attack his or her detention in federal court if he is being held in violation of the Constitution or laws and treaties of the United States. 28 U.S.C. § 2254(a). Federal review of state court incarceration is sharply limited, however. Under the strict standards imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a state prisoner's habeas petition unless the state court's adjudication (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." *Id.* § 2254(d). On the whole, this is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (internal citations omitted).

Under the first prong of section 2254(d), a state court decision is "contrary to" federal law if the state court applies a rule that contradicts the governing law from Supreme Court precedent or decides the case differently from a Supreme Court case with materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). It is important to note that "clearly established federal law" is *only* the holdings (not the dicta) of Supreme Court decisions (not those of lower courts) that had been rendered at the time of the state court decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006). Likewise, a state-court decision is an "unreasonable application" of federal law if the state court correctly identifies the governing law but unreasonably applies the rule to the facts of the petitioner's case. *See Williams*, 529 U.S. at 413. An unreasonable application means more than that the district court, in its independent judgment, believes that the relevant state court decision applied the law incorrectly, or even in clear error; rather, the application must be "objectively unreasonable." *Lockyer v. Andrade,* 538 U.S. 63, 75–76 (2003) (citations omitted).

ORDER – 4

1    Under the second prong of section 2254(d), to show that the state courts unreasonably

2 determined the facts, the petitioner must overcome a presumption that the state courts correctly

3 determined factual issues. 28 U.S.C. §§ 2254(d), (e)(1). The petitioner carries the burden of

4 rebutting the presumption of correctness by clear and convincing evidence. *Id.*

5    In reviewing the state court proceedings, the federal court looks to the last reasoned

6 state-court decision. *Van Lynn v. Farmon,* 347 F.3d 735, 738 (9th Cir. 2003). This includes the

7 defendant's trial, direct appeals, and state habeas proceedings. *See id.* at 739 (reviewing trial

8 record as last reasoned state-court decision); *Gill v. Ayers*, 342 F.3d 911, 917 n.5 (9th Cir.

9 2003) (last reasoned state-court opinion was direct appeal). When the state court has denied the

10 petition on the merits without providing reasoning, the federal courts must independently

11 review the record to determine whether the state court's decision contradicted federal law. *See*

12 *Greene v. Lampert*, 288 F.3d 1081, 1088–89 (9th Cir. 2002). In this case, the last reasoned

13 state-court decision differs for each of Petitioner's claims, as discussed below.

14    Pro se habeas petitions must be construed liberally. *Laws v. Lamarque*, 351 F.3d 919,

15 924 (9th Cir. 2003) (citing *Maleng v. Cook,* 490 U.S. 488, 493 (1989)). The petition and the

16 traverse may be treated as an affidavit. *See id.*

17    **B.    Petitioner's Second, Sixth and Seventh Claims**

18    Three of Petitioner's eight claims for relief can be quickly addressed.

19    In Petitioner's second basis for relief, failure to instruct *sua sponte* on lesser included

20 offenses, Petitioner fails to allege a federal cause of action. *James v. Reese*, 546 F.2d 325, 327

21 (9th Cir. 1976) ("Failure of a state court to instruct on a lesser offense fails to present a federal

22 constitutional question and will not be considered in a federal habeas corpus proceeding."). To

23 the extent that a criminal defendant is entitled to adequate instructions on his or her theory of

24 the defense, *see Bashor v. Riley*, 730 F.2d 1228, 1240 (9th Cir. 1984), the state court did give

25 appropriate instructions on the lesser included offense of lewd conduct with a child, and thus

26 there was no "fundamental unfairness" that offended Petitioner's due process rights. *See id.*

ORDER – 5

1    Similarly, as to Petitioner's seventh basis for relief, infirmities within the state court

2 post-conviction proceedings, Petitioner has failed to allege a federally cognizable claim. *See*

3 *Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) ("a petition alleging errors in the state

4 post-conviction process is not addressable through habeas corpus proceedings").

5    And as to Petitioner's sixth claim, failure to disqualify the trial judge, Petitioner's claim

6 rests on the mistaken belief that the court denied his motion; in fact, the court granted the

7 motion, and the matter was reassigned to a different department. (State Habeas Op. 2 (Dkt. No.

8 26-8); *see also* Clerk's Tr. vol. 1, 10, 99, 109 (Dkt. No. 26-13).) Petitioner's claim is thus

9 incorrect on the facts, and cannot support habeas relief.

10    The Court addresses Petitioner's five remaining claims in turn.

11    **C.    Insufficient Evidence to Show Force or Duress—Petitioner's First Claim**

12    Petitioner argues that the evidence at trial was insufficient to support his convictions for

13 aggravated sexual assault (Counts 3, 5, 9, and 10) because the prosecution failed to establish

14 force or duress. (Am. Pet. 5 (Dkt. No. 9).) In the last reasoned state-court decision, the

15 California Court of Appeal disagreed. (Direct Appeal 4–18 (Dkt. No. 26-4).)

16    As a matter of federal constitutional law—the appropriate locus of inquiry here— "the

17 Due Process Clause protects the accused against conviction except upon proof beyond a

18 reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In*

19 *re Winship*, 397 U.S. 358, 364 (1970). In reviewing the sufficiency of the evidence, "[the

20 *Winship*] inquiry does not require the court to ask itself whether *it* believes that the evidence at

21 trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether,

22 after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of

23 fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*

24 *v. Virginia*, 443 U.S. 307, 318–19 (1977) (emphasis in original). The Ninth Circuit has

25 observed that the AEDPA adds "an additional layer of deference" to *Jackson*: The state court

26 decision must have so unreasonably applied the rule that no "rational trier of fact could have

1    found the essential elements of the claim beyond a reasonable doubt." *Juan H. v. Allen,* 408

2    F.3d 1262, 1274–75 (9th Cir. 2005).

3         Only four of Petitioner's ten counts involved force or duress. Each was charged as a

4    violation of California Penal Code Section 269(a), which proscribes "aggravated sexual assault

5    of a child."[4] Three of Petitioner's aggravated sexual assault of a child convictions (Counts 3, 5,

6    and 10) involved rape, which is defined in the relevant statute as "an act of sexual intercourse

7    accomplished with a person not the spouse of the perpetrator . . . [w]here it is accomplished

8    against a person's will by means of force, violence, duress, menace, or fear of immediate and

9    unlawful bodily injury on the person or another." Cal Penal Code §§ 269(a)(1), 261(a)(2). The

10   remaining aggravated sexual assault of a child conviction (Count 9) involved forcible oral

11   copulation, defined as "an act of oral copulation when the act is accomplished against the

12   person's will by means of force, violence, duress, menace, or fear of immediate and unlawful

13   bodily injury on the person or another." *Id.* §§ 269(a)(4), 288a(c)(2).

14        For both crimes, the prosecution only needed to prove *one* of "force, violence, duress,

15   menace, or fear of immediate and unlawful bodily injury" beyond a reasonable doubt to

16   support a lawful conviction. *See* Cal. Penal Code §§ 261(a)(2), 288a(c)(2). Force and duress

17   are the focal points of Petitioner's habeas petition on this claim, and they are defined

18   differently under California law. Force must only be sufficient to accomplish the proscribed

19   sex act against the victim's will; it need not be used to overcome the victim's physical strength

20   or ability to resist. *People v. Griffin,* 94 P.3d 1089, 1097 (Cal. 2004).

21        Duress, on the other hand, is expressly defined by statute:

22        [A] direct or implied threat of force, violence, danger, or retribution sufficient to
23        coerce a reasonable person of ordinary susceptibilities to perform an act which
          otherwise would not have been performed, or acquiesce in an act to which one
24        otherwise would not have submitted. The total circumstances, including the age

25   _____

26        [4] The essential elements of the crime are defined by state law. *Jackson,* 443 U.S. at 324
     n.16.

ORDER – 7

1   of the victim, and his or her relationship to the defendant, are factors to consider
    in appraising the existence of duress.

2   Cal. Penal Code § 261(b).

3      The Court has extensively reviewed the trial court record and the appellate court's

4   opinion (Dkt. No. 26-4), which is the last reasoned state court decision. After viewing the

5   evidence (most notably the testimony of the victim) in the light most favorable to the

6   prosecution, *see Jackson*, 443 U.S. at 319, the Court finds that the state appellate court

7   reasonably applied *Jackson*. A rational trier of fact could have found force or duress—and

8   particularly duress—beyond a reasonable doubt. *Juan H.*, 408 F.3d at 1274–75.

9      In Counts 3 and 5, which involved separate incidents, the People introduced evidence

10  that Petitioner used force by pinning the victim, who was quite small, under him (Count 3), or

11  by grabbing her and placing her on top of him (Count 5). (*See* Direct Appeal 12–13 (Dkt. No.

12  26-4).) The People also introduced evidence as to these two counts that Petitioner violated the

13  victim's privacy, once in her bedroom while she slept, and once by locking the door before

14  assaulting her in the bathroom. (*Id.*) At all relevant times, Petitioner was a grandfather figure to

15  the victim, an authority in the household, and had prior sexual contact with the victim without

16  her consent. (*Id.* at 17.) The California Court of Appeal found that the jury reasonably

17  concluded that either force or duress accompanied the rape in both counts, as a rational fact-

18  finder could conclude that both incidents occurred against the victim's will, and the Court finds

19  this to be a faithful application of *Jackson*. (*See id.* at 18.)

20     Counts 9 and 10 stem from the same incident. The victim's memory of this incident

21  was hazy, but she testified that she remembers Petitioner first putting his hand down her shirt,

22  then her pants, and penetrating her vagina with his finger. (*Id.* at 13–14.) The next thing the

23  victim remembered was being on the floor with her shorts and underwear removed. (*Id.*)

24  Petitioner then performed oral sex on the victim (Count 9), and penetrated her vagina with his

25  penis (Count 10). (*Id.* at 13–14.) Although the evidence supporting force, particularly as to the

26  oral copulation count, was thin, the appellate court concluded that a rational fact finder could

ORDER – 8

1   have found either force or duress. (*Id.* at 18). To wit, the appellate court held that "the victim

2   had been made well aware through prior acts that her will meant nothing; [Petitioner] would do

3   to her what he wanted to do to her. A reasonable jury could find that the acts were committed

4   against the victim's will, and [Petitioner] used sufficient force to meet the *Griffin* standard." [5]

5   Alternatively, Petitioner could have used duress: "[Petitioner] began the assault immediately

6   after [the victim] told him that [her grandmother] did not have a ride home from work, thus

7   indicating the victim's belief that she was isolated with defendant for the time being." *Id.* at 18.

8           As above, the Court finds that the appellate court's conclusions were reasonable, within

9   the limited scope of review afforded by the AEDPA and *Jackson*.  Based on the evidence

10  presented, a reasonable fact finder could conclude beyond a reasonable doubt, based on the

11  victim's testimony, that both incidents occurred against the victim's will; under California law,

12  this is enough to establish the essential elements of Petitioner's four contested counts. This is

13  the end of the inquiry under *Jackson* and its progeny. Habeas relief is not appropriate on

14  Petitioner's sufficiency of the evidence claim.

15          **D.      Consecutive Rather than Concurrent Sentences—Petitioner's Third Claim**

16          Petitioner next argues that the trial court erroneously found facts that caused his

17  sentence to run consecutively, rather than concurrently, in violation of his Sixth Amendment

18  right to a trial by jury. (Am. Pet. 6 (Dkt. No. 9).) Specifically, at trial, the judge found that the

19  violent sex act crimes in Counts 3, 5, and 9 occurred on separate occasions, requiring

20  consecutive sentences; the trial court also found that Petitioner "took advantage of a position of

21  trust to commit the offense." (*See* Answer 20 (Dkt. No. 25).) Petitioner argues that, because the

22  *judge*, not the *jury*, made these factual determinations, the trial court violated the Sixth

23  Amendment requirement that "any fact (other than a prior conviction) that increases the

24

25  ───────────────────

26          [5] The definition of force applies equally to forcible rape and to forcible oral copulation.
    *State v. Guido,* 22 Cal. Rptr. 3d 826, 831 (Cal. Ct. App. 2005).

ORDER – 9

maximum penalty for a crime must be charged with an indictment, submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 476 (2000) (*quoting Jones v. United States,* 526 U.S. 227, 243 n.6 (1999)). Briefly citing *People v. Black*, 113 P.3d 534, 549 (2005), the California Court of Appeal rejected this argument in the last reasoned opinion. (Direct Appeal 30 (Dkt. No. 26-4).) However, *Black* was effectively reversed by the United States Supreme Court in *Cunningham v. California*, which held California's determinate sentencing law—notably, *not* the same statutory regime under which Petitioner was sentenced—unconstitutional. 549 U.S. 270, 293 (2007).

Despite the shifting landscape in this area of law, the result here is inescapable. There are three reasons why Petitioner's claim must fail. First, *Cunningham* cannot be applied to give Petitioner the relief he seeks because a new rule of constitutional law generally cannot form the basis of a collateral proceeding. *Teague v. Lane*, 489 U.S. 288, 310 (1989). Second, *Cunningham* does not actually mandate the result that Petitioner argues, even if it were to be applied retroactively. Most importantly, a recent Supreme Court case, *Oregon v. Ice*, squarely provides that Petitioner's constitutional rights were in not violated in this case. 129 S. Ct. 711 (2009).

*Teague* precludes the application of a new rule that is announced after a habeas petitioner's conviction becomes final, with limited exceptions. *See id. Cunningham* was decided in 2007, after Petitioner's convictions became final in 2006,[6] and therefore cannot apply to his case. Although "landmark" decisions of criminal procedure may be applied retroactively, this exception does not apply to cases in the *Apprendi* line. *See United States v. Sanchez-Cervantes*, 282 F.3d 664, 669–70 (9th Cir. 2002). Therefore, to the extent that

---

[6] Petitioner's final direct appeal in the state system was denied by the California Supreme Court on April 12, 2006. (Dkt. No. 26-6.) Thus, the decision became "final" when the deadline to file for a writ of certiorari to the Supreme Court of the United States lapsed ninety days later, on July 11, 2006. U.S. Sup. Ct. Rule 13.

ORDER – 10

1    *Cunningham* undermines the appellate court's decision, this fact is immaterial because it was

2    decided too late for Petitioner to take advantage of it. *See also Carey*, 549 U.S. at 74 ("clearly

3    established federal law" only appears in the holdings of Supreme Court decisions that had been

4    rendered at the time of the state court decision).

5         More importantly, Petitioner could not succeed on the merits even if his claims were

6    not procedurally barred. In *Cunningham,* the Supreme Court struck down California's

7    determinate sentencing law ("DSL"). *Cunningham*, 549 U.S. at 293. The DSL allowed a judge

8    to find facts that would merit either the imposition of a lower-term sentence of six years, a

9    middle-term sentence of twelve years, or an upper-term sentence of sixteen years. *Id.* at 275.

10   The Court held that such a determination of facts by the trial judge violated the right to a trial

11   by jury, because the relevant statutory maximum was the middle-term sentence, not the upper.

12   *Id.* at 293. Central to *Cunningham*'s holding is *Apprendi*'s maxim that only facts affecting

13   departures above the statutory maximum must be found by a jury beyond a reasonable doubt.

14   *Id.* at 871; *see also Apprendi*, 530 U.S. at 490. Petitioner claims that the judge imposed a

15   sentence above the statutory maximum, but he is incorrect. Each charge carries a statutorily-

16   mandated sentence of fifteen years to life. Cal Penal Code § 269(b). This is the sentence that

17   the judge imposed. There was no upward departure from a statutory maximum, so

18   *Cunningham* is inapplicable to Petitioner's sentence for each of these charges.

19        Finally, and most importantly, Petitioner's claimed constitutional right does not exist.

20   This Term, the United States Supreme Court held that a judge does not violate a defendant's

21   right to a jury trial when he makes factual determinations to impose consecutive rather than

22   concurrent sentences. *Oregon v. Ice,* 129 S. Ct. 711 (2009). *Ice* was decided as an issue of first

23   impression and resolved a jurisdictional split. *See id.* at 714–15. Thus, not only does no such

24   right currently exist; none has ever been recognized by the Supreme Court. The trial judge's

25   imposition of consecutive sentences did not violate Petitioner's clearly established

26

ORDER – 11

1  constitutional rights, which is the only basis upon which the Court could grant him habeas

2  relief. *See Carey*, 549 U.S. at 74.

3  Because the trial court sentenced Petitioner consistent with the Sixth Amendment right

4  to a jury trial, Petitioner's claim for habeas relief on this point must be denied.

5  **E.    Use of Silence as Substantive Evidence of Guilt—Petitioner's Fourth Claim**

6  Petitioner argues as his next ground for relief that his silence in a post-arrest interview

7  was admitted as evidence, thus violating his right to remain silent under *Miranda v. Arizona,*

8  384 U.S. 436 (1966), and *Doyle v. Ohio,* 426 U.S. 610, 619 (1976).

9  After Petitioner was arrested in Arkansas and extradited to California, he submitted to a

10  videotaped interview with Detective Alisa Buckley. (Direct Appeal 4 (Dkt. No. 26-4).) At the

11  outset of the interview, he was read his *Miranda* rights, and Petitioner continued to answer the

12  Detective's questions after indicating that he understood them. (*Id.*) The interview was

13  videotaped. During the course of the interview, Petitioner admitted to sexual contact with the

14  victim, but "claimed he just gave in to her efforts . . ." (*Id.*) The taped interview was played

15  for the jury. (Direct Appeal 22 (Dkt. No. 26–4).) Although Petitioner generally answered

16  Detective Buckley's questions directly, the written transcript indicated "no audible response"

17  to some questions; in the video, on three occasions, Petitioner did not affirmatively react to the

18  Detective's questioning. (Direct Appeal 26, 27, 28 (Dkt. No. 26-4).)

19  Over defense objections,[7] the trial court instructed the jury on adoptive admissions,

20  using a modified version of pattern California instruction 2.71.5. The instruction provided:

21      If you should find from the evidence that there was an occasion when the
   defendant (1) under conditions which reasonably afforded him an opportunity to
22      deny; (2) failed to make a denial or made false, evasive or contradictory
   statements, in the face of an accusation, expressed directly to him or in his
23      presence, charging him with the crime for which this defendant now is on trial
   or tending to connect him with its commission; and (3) that he heard the
24      accusation and understood its nature, then the circumstance of his silence and

25  

26        [7] (Reporter's Tr. vol. 1, 272: 15–22 (Dkt. No. 26-14).)

ORDER – 12

conduct on that occasion may be considered against him as indicating an admission that the accusation thus made was true. Evidence of an accusatory statement is not received for the purpose of proving its truth, but only as it supplies meaning to the silence and conduct of the accused in the face of it. Unless you find that the defendant's silence and conduct at the time indicated an admission that the accusatory statement was true, you must entirely disregard the statement.

(Direct Appeal 22 (Dkt. No. 26-4); *see also* Clerk's Tr. vol. 1, 233 (Dkt. No. 26-13).)

Additionally, the prosecutor indicated in closing argument that Petitioner's silence could be

used against him. Specifically, he argued in closing that:

You can look at what they call adoptive admissions. And that's a silent, false, or evasive reply to an accusation. And there's a law on that, and it's kind of long, so I won't read the whole thing, but it's 2.71.5. And it talks about you can consider if he is asked questions, and he is dead silent, or if he is false, gives false answers, and he does. . . . So, you look at his statements, his reactions, and there is a law that will help you with that.

(Reporter's Tr. vol. 1, 295 (Dkt. No. 26-14).) Petitioner claims that, in both instances, the

prosecutor used his post-*Mirandized* silence in a custodial interrogation as substantive

evidence of guilt, in violation of his Fifth Amendment rights. (Am. Pet. 7 (Dkt. No. 9).)

The California Court of Appeal rejected Petitioner's argument on direct appeal. The

appellate court recognized the fact that "our state and federal Supreme Courts have not

resolved the specific issue," but found it unnecessary to decide whether "any silence in a

custodial interview cannot be used as an adoptive admission." (Direct Appeal 24 (Dkt. No. 26-

4).) Rather, the court reasoned that most of the relevant moments in which Petitioner did not

respond, or responded inaudibly, were merely non-verbal answers or non-responses to

questions that the detective repeated, and did not implicate the right to remain silent. (*Id.* at 24–

25.) The appellate court further held that in the few instances where Petitioner did stay silent,

any error was harmless beyond a reasonable doubt. (*Id.* at 25.)[8]

_____

[8] The appellate court explained, "During the interview, [Petitioner] spoke quietly and sometimes mumbled his answers to questions. He generally accompanied a negative response with a shake of the head, sometimes accompanied by inaudible mumbling. The interviewer, Detective Buckley, had a habit of repeating her questions. In most instances where there was

ORDER – 13

1       This case presents a novel issue in the application of well-established precedent. It is

2  clear, as a matter of constitutional law, that a prosecutor may not use a criminal defendant's

3  post-*Mirandized* silence as substantive evidence of guilt. *Griffin v. California*, 380 U.S. 609,

4  619 (1965); *see also United States v. Robinson,* 485 U.S. 25, 32 (1988) ("*Griffin* prohibits the

5  judge and prosecutor from suggesting to the jury that it may treat the defendant's silence as

6  substantive evidence of guilt.") (quoting *Baxter v. Palmigiano,* 425 U.S. 308, 319 (1976)).

7  However, the issue here does not fall squarely within this line of cases. Petitioner did not

8  invoke his *Miranda* rights explicitly; he never told Detective Buckley that he wished to remain

9  silent, and he never asked for an attorney. No Supreme Court case has addressed the discrete

10  issue in the present case: Whether, after a defendant has begun speaking to law-enforcement

11  officials, his non-answers during an interrogation may be admitted alongside affirmative

12  answers in the same interview. This is the problem of "partial silence."

13       Because of the lack of a United States Supreme Court case directly on point, the

14  California court's holding was not "contrary to" federal law under the AEDPA. *See Carey*, 549

15  U.S. at 76–77. This Court's inquiry must therefore focus on whether the application of law

16  involved an unreasonable application of existing Supreme Court precedent. *See* 28 U.S.C. §

17  2254(d); *see also Lockyer*, 528 U.S. at 75–76. In order to grant Petitioner the relief he seeks,

18  the Court must find that the California Court of Appeal applied existing precedent

19  unreasonably. *See Lockyer*, 538 U.S. at 75–76.  This requires the Court to be not only firmly

20  convinced that the state court erroneously applied existing precedent, but that its application

21  was "objectively unreasonable." *Id.* at 76 (citing *Williams v. Taylor,* 549 U.S. 362, 411

22  (2000)).

23

24

25

26  no audible response, defendant had either already answered the question or he [answered] it in
his next response." (Dkt. No. 26-4 at 24.)

ORDER – 14

1       "Partial silence" has been the subject of some controversy. As above, after the

2    landmark *Miranda* decision, Supreme Court case law unequivocally prevented the prosecution

3    from using an accused's exercise of his right to remain silent as substantive evidence of guilt.

4    *See, e.g., Griffin*, 380 U.S. at 613. Defendants may, of course, waive their right to remain silent

5    and answer police questions, and these statements are admissible. *See, e.g., North Carolina v.*

6    *Butler,* 441 U.S. 369, 373 (1979). Waivers can also be withdrawn; an accused may waive

7    *Miranda* rights and agree to answer questions, but then subsequently reassert his right to

8    remain silent; after the reassertion of *Miranda,* the accused's silence is again inadmissible. *See*

9    *Moran v. Burbine,* 475 U.S. 412, 420 (1985) (*citing Miranda,* 384 U.S. at 473–74) (discussing

10   invocation of a right to an attorney).

11       The use of adoptive admissions following the accused's waiver of his *Miranda* right to

12   remain silent presents a unique set of constitutional issues. Although *Miranda* rights may be

13   re-invoked following a waiver, adoptive admissions generally involve silence that fails to re-

14   invoke *Miranda* unambiguously. Although the use of selective silence could indicate that the

15   defendant is relying on his *Miranda* warnings, in this case, and in many others, it is simply

16   unclear whether Petitioner's silence indicated that he was exercising his constitutional rights,

17   or whether he was emotionally shocked, or whether he was just thinking about how to answer a

18   difficult question. Many courts have, in fact, used this ambiguity to insist that evidence of

19   silence should not be used as substantive evidence against the accused.[9]

20       The courts that have addressed "partial silence" have not come to consensus on whether

21   partial post-arrest silence following a *Miranda* waiver can be admitted as adoptive admissions.

22

23       [9] All other considerations aside, silence in custodial interrogation is just not particularly
     probative. "Post-arrest, post-*Miranda* silence is deemed to have dubious probative value by
24   reason of the many and ambiguous explanations for such silence. . . . Silence in the face of
     accusation is an enigma and should not be determinative of one's mental condition just as it is
25   not determinative of one's guilt." *State v. Burwick,* 442 So.2d 944, 948 (Fla. 1983); *citing U.S.*
     *v. Hale*, 422 U.S. 171, 180 (1975).
26

1    Most courts to consider the issue have held that partial silence cannot be used as substantive

2    evidence of guilt. *United States v. Canterbury,* 985 F.2d 483 (10th Cir. 1993) (*citing U.S. v.*

3    *Harrold,* 796 F.2d 1275, 1279 n.3 (10th Cir. 1986) ("This court has recognized that when a

4    defendant answers some questions and not others, or in other words is 'partially silent,' this

5    partial silence does not preclude him from claiming a violation of his due process rights.");

6    *People v. Jennings,* 5 Cal. Rptr. 3d  243, 252–53 (Cal. Ct. App. 2003) (holding that post-

7    *Miranda,* any silence, including selective silence, is equivocal and cannot be used as an

8    adoptive admission). *Harrold,* also from the Tenth Circuit, seems to favor a more fact-specific

9    inquiry focused on whether the defendant has "clearly relied on a *Miranda* warning to remain

10   silent." 796 F.2d at 1279 n.3. Other cases considering impeachment evidence have come to

11   similar conclusions. *United States v. Baker,* 432 F.3d 1189, 1222 (11th Cir. 2005), *cert. denied,*

12   547 U.S. 1085 (2006) (finding prosecutor's question "unnecessary and inappropriate" because

13   it suggested that defendant had terminated interview and refused to answer further questions,

14   but finding no violation based on this single reference); *United States v. Shavers,* 615 F.2d 266,

15   268-69 (5th Cir. 1980) (finding reversible error in prosecutor's comment on defendant's silence

16   for impeachment); *United States v. Ghiz,* 491 F.2d 599, 600 (4th Cir. 1974) (finding reversible

17   error in FBI agent's testimony that *Mirandized* defendant "stated that he did not desire to

18   answer any questions concerning" the crime); *United States v. Jenkins*, 499 F.Supp.2d 1268

19   (M.D. Fla. 2007) (prosecutor's comment on defendant's refusal to sign a sworn written

20   statement, even after recorded verbal questioning, was constitutional error).

21          However, "[t]here is some authority that a defendant who agrees to speak following

22   advisement of *Miranda* warnings has, in some circumstances, waived his *Miranda* rights, thus

23   losing any protection against comments on his subsequent silence . . ." *Jenkins*, 499 F.Supp.2d

24   at 1275 (collecting cases); *see also United States v. Ramirez,* 79 F.3d 298, 304–305 (2d Cir.

25   1996); *People v. Hurd,* 73 Cal. Rptr. 2d 203, 209 (Cal. Ct. App. 1998) ("A defendant has no

26   right to remain silent selectively. Once a defendant elects to speak after receiving *Miranda*

warning, his or her refusal to answer questions may be used for impeachment purposes absent any indication that such refusal is an invocation of *Miranda* rights."); *United States v. Burns*, 276 F.3d 439, 442 (8th Cir. 2002) (holding that prosecutor's comment on defendant's silence in response to one question and eventual refusal to answer further questions did not violate *Doyle* because they were in the context of an otherwise admissible conversation); *Anderson v. Charles*, 448 U.S. 912 (1980) (dicta) ("Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent."). Most of these cases consider using silence as impeachment evidence, however, not as substantive evidence of guilt, and most also rely at least in part on the fact-specific context of the questioning.

Regardless of what the correct answer may be as a matter of constitutional law, the Court is constrained by the scope of review under the AEDPA. There is jurisdictional disagreement on this issue, and no clear Supreme Court direction exists. Reasonable minds have differed in interpreting the applicable Supreme Court doctrine to "partial silence" cases. In order for the Court to grant the petition, the Court would not only have to adopt the line of cases disallowing similar silences, but also hold that the competing line of cases "unreasonably applied" *Miranda* and its progeny. The Court cannot do so. It is reasonable to think that a defendant who begins to answer questions has waived subsequent comment on his silence, especially, as in this case, in the absence of an *explicit* invocation of *Miranda* rights.[10] The California Court of Appeal did not contradict the Supreme Court, nor did it unreasonably apply

---

[10] At no time did Petitioner ever claim the right to remain silent. Moreover, only at three points in the interview did Defendant not respond to Detective Buckley's questions. (Direct Appeal 26, 27, 28 (Dkt. No. 26-4).) In two of these three points, Petitioner went on to respond to Detective Buckley's questions. In the third instance, Petitioner followed up his silence with "I can't remember about that." (*Id.* at 27.) His silences were actually partially responsive.

ORDER – 17

1   its precedents. Under AEDPA, this ends the inquiry; Petitioner is not entitled to federal habeas

2   relief on this ground.

3          Even so, the facts of this case do not support habeas relief on this claim. The Court

4   agrees with the California Court of Appeal that, even if Petitioner's silence to certain questions

5   did constitute an assertion of his *Miranda* rights, such error was harmless beyond a reasonable

6   doubt. *See Chapman v. California*, 386 U.S. 18, 24 (1967).

7          Petitioner did not pursue a theory at trial that he never performed sex acts on the victim.

8   Rather, he argued that, although he did behave inappropriately, he did not use force or

9   duress.[11]   Upon reviewing the record, the Court can identify no instance of Petitioner's silence

10  that could have supported an inference that Petitioner had used force and duress to commit the

11  acts on the victim. (*See* Direct Appeal 28 (Dkt. No. 26-4).) The only inferences that the jury

12  could have drawn from the three isolated instances of silence favored Petitioner. Any

13  constitutional error was harmless beyond a reasonable doubt.

14         **F.      Inadequacy of the Information—Petitioner's Fifth Claim**

15         Next, Petitioner argues that the State violated his right to due process because the

16  information that charged him was "a carbon copy indictment of four counts of forcible rape."

17  (Am. Pet. 6B (Dkt. No. 9 at 8).) Presumably, Petitioner refers to the generic nature of the

18  charging information as to 3, 5, 9, and 10.

19         Counts 3 and 5 are identical. Each states: "On or about and between August 20, 1997,

20  and August 20, 1998, . . .[Petitioner] did commit a felony, namely, a violation of Section

21  269(a)(1) [by]  . . . rape." (Clerk's Tr. vol. 1, 37–38 (Dkt. No. 26–13).) Count 9 reads similarly

22

23         [11] Defense counsel argued: "What you have seen and observed from him is that he is
    not a violent man.  Doesn't mean he didn't commit very, very serious crimes, didn't mean that
24  this relationship between him and his [step] granddaughter didn't get very, very twisted,
    doesn't mean that he [didn't make] very selfish and harmful choices, but all we are talking
25  about was there force being used here?  Were there threats [of] violence[,] either direct or
    implied[?]" (Reporter's Tr. vol. 2, 312 (Dkt. No. 26-14).)
26

ORDER – 18

1  and states that "[o]n or about and between August 20, 1999, and August 20, 2000, . . .

2  [Petitioner] did commit a felony, namely a violation of Section 269(a)(4) [by] . . . oral

3  copulation." (*Id.* at 40.) Count 10 states that "[o]n or about and between August 20, 1999, and

4  August 20, 2000, . . . [Petitioner] did commit a felony, namely a violation of Section 269(a)(1)

5  [by] . . . rape." (*Id.*)

6       The last reasoned opinion on this issue is Petitioner's state habeas petition to the

7  Superior Court of California. (State Habeas Op. 1 (Dkt. No. 26-8).) There, the court first held

8  that Petitioner was procedurally barred from raising the claim for the first time.[12] (*Id.* The court

9  went on to explain:

10          Regardless, the claim is meritless. The charges specified the time period during
11          which each charge was alleged to have occurred; each specifies the victim and
            the victim's age; each specifies that the defendant was more than ten years older
12          than the victim; and each identifies rape as the act committed. That was specific
            enough to meet due process requirements. Further, by the time of trial,
13          petitioner was on sufficient notice as to charges, evidence having been
            presented at the preliminary hearing specifically described regarding each count
14          at the time.

15  *Id.*

16       The Sixth Amendment provides that the accused "shall enjoy the right . . . to be

17  informed of the nature and cause of the accusation." U.S. Const. amend. VI. A criminal

18  charging document  must contain the elements of the offense charged, fairly inform the

19  defendant of the charges that he must defend, and allow him to plead an acquittal or conviction

20  in bar of future prosecutions for the same offense. *United States v. Resendiz-Ponce,* 549 U.S.

21  102, 108 (2007); *United States v. Russell*, 369 U.S. 749, 763–64 (1962). The Ninth Circuit has

22  required that the elements to only be stated with enough detail to allow the accused to prepare

23  his defense. *United States v. Johnson,* 804 F.2d 1078, 1084 (9th Cir. 1986).

24       [12] Petitioner has raised an ineffective assistance of counsel claim with respect to his
25  attorney's failure to raise this issue on direct appeal. This could excuse Petitioner's failure to
    raise this ground for relief in his direct appeal. Therefore, the Court addresses the notice issue
26  on the merits.

ORDER – 19

1    The Court agrees with the California Superior Court's finding that Petitioner's

2    constitutional right to notice was not violated. The information was a standard charging

3    document that specified a one-year range in which the incident took place and the victim's age

4    at the time of the offense. A narrower time range might not have been possible: the acts

5    charged in the information occurred over a six-year period, and about two more years passed

6    between when Petitioner stopped living with the victim and when the crimes were reported.

7    (*See* Direct Appeal 3 (Dkt. No. 26-4).) Furthermore, any lack of notice was mitigated by the

8    December 17, 2003 preliminary hearing. (*See* Clerk's Tr. vol. 1, 47, 50–51 (Dkt. No. 26-13).)

9    Considered as a whole, Petitioner had ample opportunity to answer the charges and provide a

10   defense. Habeas relief on this ground is not appropriate.

11   **G.    Ineffective Assistance of Counsel—Petitioner's Eighth Claim**

12   Petitioner argues that he did not have effective assistance of counsel because his "trial

13   counsel, as well as appellate counsel," failed to "raise all meritorious claims, and . . . enable

14   petitioner to bring his claims to the federal court system." (Am. Pet. 6F (Dkt. No. 9 at 12).)

15   This claim is raised for the first time in this Petition.

16   The Sixth Amendment guarantees a right to effective assistance of counsel, whether it

17   occurs at trial or on a first appeal as a matter of right. U.S. CONST. amend. VI; *Evitts v. Lucey,*

18   469 U.S. 387, 391–405 (1985). Ineffective assistance is established when (1) counsel's actions

19   fell below the objective standard of reasonableness, and (2) the errors resulted in prejudice.

20   *Strickland v. Washington,* 466 U.S. 668, 691–93 (1984). Prejudice requires "a reasonable

21   probability that, but for counsel's unprofessional errors, the result of the proceeding would

22   have been different."  These principles are "clearly established federal law" for the purposes of

23   this habeas statute. *Williams,* 529 U.S. at 391.

24   Petitioner does not identify which claims his counsel failed to raise at trial and on direct

25   appeal. However, in construing his *pro se* petition liberally, the Court assumes that Petitioner

26   refers to the two issues that were raised for the first time on habeas appeal, namely, sufficiency

ORDER – 20

1  of the notice of charges in the information (Petitioner's Fifth Claim, *supra*) and the ruling on

2  Petitioner's motion to replace the trial judge (Petitioner's Sixth Claim, *supra*). As these claims

3  are without merit, Petitioner has suffered no prejudice from the alleged ineffective assistance

4  of counsel. Thus, the Court need not reach whether Petitioner's counsel failed to meet the

5  standard of care by failing to raise these claims on direct appeal.

6           **H.       Petitioner's Request for an Evidentiary Hearing**

7           As for Petitioner's last request, for an evidentiary hearing, a prisoner who has

8  developed the factual basis of his claims in state court is entitled to an evidentiary hearing

9  when (1) the petitioner's allegations, if proven, would entitle him to relief, and (2) the trier of

10 fact has not reliably found the relevant facts after a full and fair hearing. *Silva v. Woodford*,

11 279 F.3d 825, 853 (9th Cir. 2002). An evidentiary hearing is not required on issues that the

12 court can resolve by referring to the state court record. *Totten v. Merkle*, 137 F.3d 1172, 1176

13 (9th Cir. 1998) (cited in *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)). Because Petitioner

14 has not alleged any claims that, if proven, would entitle him to relief, an evidentiary hearing is

15 inappropriate.

16 **III.    CONCLUSION**

17          For the foregoing reasons, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 9)

18 is DENIED.

19          DATED this 15th day of October, 2009.

20

21

22                                          _____

23                                          John C. Coughenour
                                            UNITED STATES DISTRICT JUDGE
24

25

26

ORDER – 21